UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDGAR MARTINEZ et al., | No. 2:15-cv-01934-KJM-CKD |
| Plaintiffs, | |
| v. | ORDER |
| FLAGSTAR BANK, FSB et al., | |
| Defendants. | |

        The plaintiffs, Edgar Martinez, Erika Martinez, and Delfina Prado, allege Flagstar Bank, FSB foreclosed on their home while their application for a loan modification was pending. They also allege the application process was so bewildering that it shows Flagstar was negligent, and so deceptive that it shows Flagstar acted fraudulently. Flagstar moves to dismiss their first amended complaint. The matter was submitted for decision without a hearing. As discussed below, the motion is granted in part and denied in part.

I.    JUDICIAL NOTICE

        As a preliminary matter, the court grants the defendants' unopposed request for judicial notice. The documents for which judicial notice is requested are public records, including publicly recorded documents and court filings in related cases. *See* Fed. R. Civ. P. 201 (governing judicial notice); *Harris v. Cty. of Orange*, 682 F.3d 1126, 1132 (9th Cir. 2012)

1

(undisputed matters of public record are subject to judicial notice on a motion to dismiss); *Olmstead v. ReconTrust Co.*, 852 F. Supp. 2d 1318, 1321 (D. Or. 2012) (recorded documents, such as a deed of trust, may be subject to judicial notice on a motion to dismiss).  The court notes, however, that Flagstar can save effort in the future by simply citing the court's previous orders in this case rather than requesting judicial notice of them. *See, e.g.*, *L.H. v. Schwarzenegger*, 645 F. Supp. 2d 888, 891 n.1 (E.D. Cal. 2009).

## II. BACKGROUND

### A. Allegations

On this motion, the court assumes the plaintiffs' allegations are true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Here, the plaintiffs' first amended complaint alleges as follows: Mr. and Ms. Martinez purchased a house in Stockton, California in September 2008, and lived there with their children.  First Am. Compl. ¶ 10, ECF No. 15.  Their purchase was financed by a mortgage loan through Wholesale America Mortgage, Inc. *Id.* ¶ 11.  The deed of trust names Mr. Martinez and Ms. Prado as borrowers, Req. J. Notice Ex. 1, ECF No. 17-1, but in October 2008, the property was conveyed from Ms. Prado and Mr. Martinez to Mr. and Mrs. Martinez as husband and wife as joint tenants. *Id.* Exs. 2, 3.  The loan was refinanced in late 2008, and Flagstar acquired it soon afterwards. *See* First Am. Compl. ¶¶ 12–13.

In late 2011, after Mr. Martinez lost his job and Ms. Martinez began suffering from health problems, they began experiencing financial hardship. *Id.* ¶ 14.  In about January 2012, they contacted Flagstar and asked whether they could obtain mortgage relief assistance. *Id.* ¶ 15.  They were current in their payments at the time. *Id.*  Flagstar sent them an application for a loan modification, which they completed and returned. *Id.*  For the next six months, Flagstar representatives frequently told the Martinezes they must miss payments before Flagstar would consider a modification. *Id.* ¶ 16.  They were reluctant to follow this advice, and they could have borrowed money from friends or family or even declared bankruptcy instead of missing payments, but in July 2012, they decided to miss a payment. *Id.* ¶ 17.  At about this time, Ms. Prado moved into the house. *Id.* ¶ 11.  In 2012, she also signed a quitclaim deed, transferring her rights in the property to Mr. Martinez.  Req. J. Notice Ex. 6, ECF No. 17-2.

1      Flagstar repeatedly asked the Martinezes to resubmit the same documents, and
2   despite the fact that they submitted everything Flagstar requested, their application was repeatedly
3   denied for incompleteness. First Am. Compl. ¶¶ 18–19. These delays, claim the Martinezes,
4   were intentional and meant to prolong the loan modification process. *Id.* Flagstar assured them it
5   would not foreclose on the house while their applications were pending, but in September 2012,
6   while their application for a loan modification was pending, Flagstar recorded a notice of default.
7   *Id.* ¶ 20; Req. J. Notice Ex. 4, ECF No. 17-1 (notice of default). In April 2013, Flagstar recorded
8   a notice of trustee's sale. First Am. Compl. ¶ 21; Req. J. Notice Ex. 5, ECF No. 17-2 (notice of
9   trustee's sale).

10      After recording these notices, Flagstar informed the Martinezes their application
11  had been denied because it was incomplete, but the Martinezes had in fact submitted a complete
12  application. First Am. Compl. ¶ 22. The same day Flagstar denied their application for
13  incompleteness, the Martinezes submitted another complete application, and Flagstar postponed
14  the foreclosure sale date. *Id.* ¶ 23. The next month, Flagstar sent the Martinezes a letter that
15  stated they did not qualify for a modification due to "excessive obligations" and because they did
16  not meet the investor requirements. *Id.* ¶ 24. But Flagstar had known about their obligations, it
17  was itself the "investor," and since the outset it had told the Martinezes they were qualified for a
18  loan modification. *Id.* In May and July 2013, the Martinezes again submitted complete
19  applications for a loan modification, but as before, Flagstar claimed the applications were
20  incomplete. *Id.* ¶ 25.

21      On July 9, 2013, Flagstar sold the house in a foreclosure sale. *Id.* ¶ 26. The
22  Martinezes moved out in the second week of August 2013. *Id.* ¶ 26. They were forced to sell
23  many of their possessions for less than their true value. *Id.* ¶ 30. If Flagstar had fairly considered
24  the applications for loan modifications, it would have granted them, and the Martinezes would
25  have made payments to bring their account current. *Id.* Fees, interest, and penalties would not
26  have accrued, and they would not have suffered negative reports to their credit. *Id.* The process
27  caused them stress, anxiety, migraines, depression, and marital difficulties. *Id.*

28

B.  Ms. Prado

The plaintiffs assert many facts about Ms. Prado in their opposition brief that they do not allege in their complaint. Ms. Prado's identity is the first of these facts. According to the plaintiffs' opposition brief, Ms. Prado is Ms. Martinez's mother. *See* Opp'n at 1, ECF No. 19. In addition, the briefing asserts Ms. Prado lived with the Martinez family in 2008, but later moved away to Arizona. *See id.* at 1, 3.

The plaintiffs' opposition brief also asserts that in about July 2012, Ms. Prado moved back to California to help the Martinezes with their expenses and begin looking for a job. Opp'n at 3. As noted above, in 2012 she signed a quitclaim deed, transferring her rights in the property to Mr. Martinez. Req. J. Notice Ex. 6. In the plaintiffs' opposition brief, they assert she signed the quitclaim deed at the request of "the bank." Opp'n at 3.

Finally, the complaint alleges Ms. Prado was "generally aware of the modification process and foreclosure proceedings" and that she, along with the Martinezes, was forced to leave the house and suffered harm to her credit as a result of the foreclosure. *See* First Am. Compl. ¶¶ 11 & 31. In their opposition brief, the plaintiffs assert in addition that Ms. Prado submitted documents with the Martinezes' application for a loan modification, including a financial worksheet, a letter of hardship, a statement of her income, and an explanation of her residence in California and Arizona. Opp'n at 3.

C.  Procedural History

The plaintiffs filed a complaint in San Joaquin County Superior Court in July 2015. ECF No. 1-2. They alleged claims for negligent and intentional misrepresentation, false promise, negligence, intentional infliction of emotional distress, violation of California Civil Code sections 2923.6[1] and 2924.10,[2] and violations of California's Unfair Competition Law

---

[1] That section reads, in part, "If a borrower submits a complete application for a first lien loan modification offered by, or through, the borrower's mortgage servicer, a mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent shall not record a notice of default or notice of sale, or conduct a trustee's sale, while the complete first lien loan modification application is pending. . . ." Cal. Civ. Code § 2923.6(c).

[2] That section reads, in part, "When a borrower submits a complete first lien modification application or any document in connection with a first lien modification application, the mortgage

4

1  (UCL), Cal. Bus. & Prof. Code §§ 17200 *et seq.  See generally id.*  Flagstar removed the case to
2  this court on the basis of this court's diversity jurisdiction.  Not. of Removal, ECF No. 1.
3  　　　　　Flagstar moved to dismiss in September 2015.  ECF No. 7.  In January 2016, the
4  motion was granted in part and denied in part: (1) Ms. Prado's claims were dismissed with leave
5  to amend to allege facts showing she suffered a redressable injury; (2) the motion was granted
6  with respect to the claims for negligence and negligent infliction of emotional distress, but leave
7  to amend was granted to allege facts that showed these claims accrued within the limitations
8  period; and (3) the motion was denied with respect to the claims for negligent and intentional
9  misrepresentation, false promise, and violation of the California Civil Code and UCL.  Order
10 Jan. 7, 2016, ECF No. 12.
11 　　　　　The plaintiffs filed an amended complaint later in January, alleging the same
12 claims as in the original complaint.  ECF No. 15.  In February 2016, Flagstar renewed its motion
13 to dismiss Ms. Prado's claims and the claims for negligence and intentional infliction of
14 emotional distress.  ECF No. 16.  As to Ms. Prado's claims, Flagstar argues the plaintiffs have
15 still not alleged facts that establish Ms. Prado's standing.  As to the negligence claims, Flagstar
16 argues the plaintiffs' allegations show neither that Flagstar owed a duty nor that the plaintiffs
17 suffered damages.  And as to the claim for intentional infliction of emotional distress, Flagstar
18 argues the plaintiffs have not alleged facts that show it acted outrageously or that they suffered
19 anything but financial losses.
20 III.　　LEGAL STANDARD
21 　　　　　A party may move to dismiss for "failure to state a claim upon which relief can be
22 granted."  Fed. R. Civ. P. 12(b)(6).  The motion may be granted only if the complaint lacks a
23 "cognizable legal theory" or if its factual allegations do not support a cognizable legal theory.
24 *Hartmann v. Cal. Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1122 (9th Cir. 2013).  The court
25 assumes these factual allegations are true and draws reasonable inferences from them.  *Iqbal*, 556
26 U.S. at 678.  If the complaint's allegations do not "plausibly give rise to an entitlement to relief,"

---

servicer shall provide written acknowledgment of the receipt of the documentation within five
business days of receipt. . . ."  Cal. Civ. Code § 2924.10(a).

1  the motion must be granted. *Id.* at 679. Allegations that are "merely consistent with the
2  defendant's liability" are not enough. *Id.* at 678 (citation and quotation marks omitted).

3        A complaint need contain only a "short and plain statement of the claim showing
4  that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), not "detailed factual allegations,"
5  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). But this rule demands more than
6  unadorned accusations; "sufficient factual matter" must make the claim at least plausible. *Iqbal*,
7  556 U.S. at 678. In the same vein, conclusory or formulaic recitations of a cause's elements do
8  not alone suffice. *Id.* (quoting *Twombly*, 550 U.S. at 555). Evaluation under Rule 12(b)(6) is a
9  context-specific task drawing on "judicial experience and common sense." *Id.* at 679. And aside
10 from the complaint, district courts have discretion to examine documents incorporated into the
11 complaint by reference, *Davis v. HSBC Bank Nev., N.A.*, 691 F.3d 1152, 1160 (9th Cir. 2012);
12 affirmative defenses based on the complaint's allegations, *Sams v. Yahoo! Inc.*, 713 F.3d 1175,
13 1179 (9th Cir. 2013); and proper subjects of judicial notice, *W. Radio Servs. Co. v. Qwest Corp.*,
14 678 F.3d 970, 976 (9th Cir. 2012).

15 IV.    <u>DISCUSSION</u>

16     A.    <u>Ms. Prado's Standing</u>

17       "Standing is the threshold issue of any federal action . . . ." *Emp'rs-Teamsters
18 Local Nos. 175 & 505 Pension Trust Fund v. Anchor Capital Advisors*, 498 F.3d 920, 923 (9th
19 Cir. 2007). Article III standing requires a plaintiff to satisfy three conditions: (1) the plaintiff
20 must suffer a concrete and particularized "injury in fact"; (2) the injury and conduct complained
21 of must be causally connected, and the injury must be traceable to the defendant's challenged
22 actions; and (3) the injury must be "likely" to be redressed by resolution favorable to the plaintiff.
23 *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). At this initial stage of litigation, it
24 is enough for a plaintiff to allege and not prove these three elements. *See id.* at 561.

25       The court previously dismissed Ms. Prado's claims because the original complaint
26 did not explain what injury she suffered. *See* Order Jan. 7, 2016, at 2. The amended complaint
27 sheds little additional light on her alleged injury. Ms. Prado does not clarify what property
28 interest she claims to have lost in this litigation. She does not address the effect of the publicly

1  recorded documents that show she conveyed the property to Mr. and Ms. Martinez in 2008 and
2  quitclaimed her interest to Mr. Martinez in 2012.  Req. J. Notice Exs. 2, 3, 6.  She alleges only
3  that she remained obligated to repay the mortgage debt and lived in the house.  First Am. Compl.
4  ¶¶ 11 & 31.  Neither does she allege she participated in the application process, but only that she
5  was "generally aware" of it.  *Id.* ¶ 31.  These allegations do not show she has standing.

6  As noted above, the plaintiffs' opposition brief includes somewhat more detailed
7  assertions: Ms. Prado signed the quitclaim deed "at the request of the bank" and helped prepare
8  documents that were submitted with the applications for a loan modification.  Opp'n at 3.  But the
9  court cannot consider these assertions here.  *See Schneider v. Cal. Dep't of Corr.*, 151 F.3d 1194,
10 1197 n.1 (9th Cir. 1998) ("In determining the propriety of a Rule 12(b)(6) dismissal, a court *may*
11 *not* look beyond the complaint to a plaintiff's moving papers, such as a memorandum in
12 opposition to a defendant's motion to dismiss." (emphasis in original)).

13 The only additional allegation that might support Ms. Prado's standing is her claim
14 that the foreclosure sale and delinquent payments damaged her credit.  *See* First Am. Compl.
15 ¶ 11.  Nevertheless, her allegations are too conclusory to be entitled to a presumption of truth, and
16 do not show she has standing to participate in this lawsuit.  *See Hernandez v. Select Portfolio,*
17 *Inc.*, No. 15-01896, 2015 WL 3914741, at *22 (C.D. Cal. June 25, 2015) ("Although [the
18 plaintiff] maintains she suffered damage to her credit . . . she does not allege any facts to support
19 these legal conclusions.").

20 Ms. Prado's claims are therefore dismissed.  This leaves the question of whether
21 she should be allowed a second opportunity to amend.  In light of the Federal Rules' liberal
22 policy of amendment, "a district court should grant leave to amend even if no request to amend
23 the pleading was made, unless it determines that the pleading could not possibly be cured by the
24 allegation of other facts."  *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995) (citation and
25 quotation marks omitted).  Here, with one exception, the pleading shortfalls identified in this
26 order may perhaps be cured with more concrete factual allegations, and could therefore show Ms.
27 Prado has standing.  The exception is Ms. Prado's claim that she suffered damage to her credit.
28 As explained in the following paragraphs, the court concludes a claim of damaged credit would

be preempted by the Fair Credit Reporting Act (FCRA), 15 U.S.C. §§ 1681–1681x. It therefore could not support her standing here.

"Congress enacted FCRA in 1970 to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 52 (2007). The FCRA imposes duties on those who send information to credit reporting agencies, whom it refers to as "furnishers" of credit information. *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1153 (9th Cir. 2009). According to a House Report, "[t]he most common . . . furnishers of information" include "lenders." *Id.* at 1153 n.7 (quoting H.R. Rep. No. 108–263, at 24 (2003)). A furnisher's duties generally fall into two classes. First, the FCRA imposes a duty to provide accurate information, for example requiring that "[a] person shall not furnish any information relating to a consumer to any consumer reporting agency if the person knows or has reasonable cause to believe that the information is inaccurate." 15 U.S.C. § 1681s-2(a)(1)(A). The Ninth Circuit has held that the duties within this class are not enforceable by private actions. *Gorman*, 584 F.3d at 1153–54. Second, the FCRA imposes duties on furnishers of credit information who receive notice from a credit reporting agency that a consumer disputes the information the furnisher provided to the agency. *See generally* 15 U.S.C. § 1681s-2(b). The FCRA expressly creates a private right of action for willful or negligent failures to fulfill the duties in this second class. *Id.* §§ 1681n, 1681*o*; *Gorman*, 584 F.3d at 1154.

In two provisions, the FCRA expressly preempts state law claims against furnishers of credit information. First, 15 U.S.C. § 1681h(e) preempts claims of defamation, invasions of privacy, and negligence that are not based on the furnisher's "malice or willful intent to injure." *Subhani v. JPMorgan Chase Bank, Nat'l Ass'n*, No. 12-01857, 2012 WL 1980416, at *3 (N.D. Cal. June 1, 2012). Second, in 1996, Congress amended the FCRA to provide that "[n]o requirement or prohibition may be imposed under the laws of any State . . . with respect to any subject matter regulated under . . . [15 U.S.C. § 1681s-2]. . . ." 15 U.S.C. § 1681t(b)(1)(F).[3] On

---

[3] Congress expressly reserved from preemption those claims brought under California Civil Code § 1785.25(a), which provides, "A person shall not furnish information on a specific transaction or experience to any consumer credit reporting agency if the person knows or should

the one hand, the second provision appears to preempt any state law claim based on a creditor's responsibilities under § 1681s-2.  But on the other hand, the first provision implies certain claims may proceed if based on the furnisher's malice or intent to injure.

Federal courts are divided over how these two sections may be reconciled.  *See Gorman*, 584 F.3d at 1166–67 (illustrating the division but declining to resolve it); *see also, e.g.*, *Woods v. Prot. One Alarm Monitoring, Inc.*, 628 F. Supp. 2d 1173, 1180–85 (E.D. Cal. 2007) (collecting conflicting authority).  The Second and Seventh Circuits have concluded that § 1681t(b)(1)(F) totally preempts state statutory and common law claims that are predicated on the reporting of credit information to credit agencies.  *See Purcell v. Bank of Am.*, 659 F.3d 622, 624–25 (7th Cir. 2011); *Macpherson v. JPMorgan Chase Bank, N.A.*, 665 F.3d 45, 48 (2d Cir. 2011).  Several district courts within this Circuit have adopted a similar conclusion and held that "state statutory or common law claims alleging damages related to a furnisher's disclosure of inaccurate credit information are preempted."  *Desser v. U.S. Bank, N.A.*, No. 13-09190, 2014 WL 4258344, at *5–6 (C.D. Cal. Aug. 27, 2014); *see also Subhani*, 2012 WL 1980416, at *4 (collecting authority).  These courts have reached the same conclusion in the factual context of this case, i.e., where the plaintiff alleges claims against a mortgage lender or servicer related to a loan modification application.  *See, e.g.*, *Desser*, 2014 WL 4258344, at *5 (finding state-law tort claims were "preempted to the extent that these claims assert[ed] damages resulting from Defendant's reporting to a credit agency of inaccurate information concerning the status of Plaintiffs' loan").

Having considered these authorities, this court adopts the growing majority rule: state law claims "based on alleged injury arising purely from the reporting of credit information by a furnisher of credit" are preempted by the FCRA.  *Roybal v. Equifax*, 405 F. Supp. 2d 1177, 1181 (E.D. Cal. 2005).

Here, Ms. Prado alleges Flagstar's actions caused her injury by reporting incorrect information about the loan, damaging her credit.  This is an injury "arising purely from the

---

know the information is incomplete or inaccurate."  Here, the plaintiffs do not advance a claim based on section 1785.25(a).

reporting of credit information by a furnisher of credit," *id.*, and may not support a state-law statutory or tort claim. But an amended claim would not be preempted if founded on injuries other than damage to her credit and the reporting of credit information.

The court therefore grants leave to amend to the extent Ms. Prado can establish her standing by asserting damages other than credit damage. Because the court previously granted Ms. Prado leave to amend her claims and the first amended complaint did not adequately address the shortcomings identified in the court's previous order, leave to amend is granted on the following condition: if Ms. Prado is to remain a plaintiff in this action, a second amended complaint must clarify (a) what property interest Ms. Prado alleges she lost as a result of Flagstar's alleged wrongdoing, if any, and (b) what injuries she suffered, other than damage to her credit.

B. <u>Negligence</u>

To state a claim for negligence, a plaintiff must allege "(1) the defendant owed the plaintiff a duty of care, (2) the defendant breached that duty, and (3) the breach proximately caused the plaintiff's damages or injuries." *Lueras v. BAC Home Loans Servicing, LP*, 221 Cal. App. 4th 49, 62 (2013). Flagstar argues the complaint falls short of establishing it owed the Martinezes any duty or caused them any damages. Mot. at 6–10.

1. <u>Duty of Care</u>

The defendant's duty of care is a prerequisite to any claim for negligence. *Nymark v. Heart Fed. Savings & Loan Ass'n*, 231 Cal. App. 3d 1089, 1095 (1991). Whether a duty of care exists is a question of law. *First Interstate Bank of Ariz., N.A. v. Murphy, Weir & Butler*, 210 F.3d 983, 986 (9th Cir. 2000).

As a general rule, banks owe borrowers no duty of care unless the institution's involvement "exceed[s] the scope of its conventional role as a mere lender of money." *Nymark*, 231 Cal. App. 3d at 1096. But "*Nymark* does not support the sweeping conclusion that a lender never owes a duty of care to a borrower." *Jolley v. Chase Home Fin., LLC*, 213 Cal. App. 4th 872, 901 (2013) (internal quotation marks omitted). Rather, the court weighs six factors to decide whether a financial institution owes a borrower a duty of care:

> [1] the extent to which the transaction was intended to affect the plaintiff, [2] the foreseeability of harm to him, [3] the degree of certainty that the plaintiff suffered injury, [4] the closeness of the connection between the defendant's conduct and the injury suffered, [5] the moral blame attached to the defendant's conduct, and [6] the policy of preventing future harm.

*Nymark*, 231 Cal. App. 3d at 1098 (quoting *Connor v. Great W. Sav. & Loan Assn.*, 69 Cal. 2d 850, 865 (1968)). These six factors are commonly referred to as the "*Biakanja* factors" after *Biakanja v. Irving*, 49 Cal. 2d 647, 650 (1958).

California courts have not settled on a uniform application of these six factors in mortgage cases. In *Lueras v. BAC Homes Loans Servicing, LP*, the Court of Appeal considered whether a borrower could state a claim for negligence based on a lender's failure to "timely and accurately respond to customer requests and inquiries, . . . comply with state consumer protection laws, properly service the loan, and use consistent methods to determine modification approvals," among other things. 221 Cal. App. 4th at 63. After citing the general rule of *Nymark*—that a lender does not owe a borrower a duty of care unless its involvement exceeds the scope of an ordinary lender-borrower relationship—and collecting conflicting federal district court decisions, the *Lueras* court concluded "a loan modification is the renegotiation of loan terms, which falls squarely within the scope of a lending institution's conventional role as a lender of money." *Id.* at 63–67. Therefore, it found a residential lender owed no "common law duty of care to offer, consider, or approve a loan modification, or to explore and offer foreclosure alternatives." *Id.* at 67.

By contrast, in *Alvarez v. BAC Home Loans Servicing, L.P.*, decided after *Lueras*, a different division of the Court of Appeal reached the opposite conclusion. 228 Cal. App. 4th at 944–45, 948. The *Alvarez* court cited *Lueras's* reasoning that "a lender does owe a duty of care to a borrower not to make material misrepresentations about the status of an application for a loan modification" and that a borrower would foreseeably be harmed "by an inaccurate or untimely communication . . . about the status of a loan modification application." *Id.* at 946–47 (quoting 221 Cal. App. 4th at 68–69). The court then cited *Garcia v. Ocwen Loan Servicing, LLC*, a federal district court decision, as persuasive authority for the proposition that a lender who

11

1   undertakes to review a borrower's application for a loan modification must exercise due care
2   under the *Biakanja* factors. *Id.* at 948 (citing No. 10-0290, 2010 WL 1881098, *2–4 (N.D. Cal.
3   May 10, 2010)). In short, the *Alvarez* court reasoned that because (1) a loan modification is
4   intended to benefit the borrower, (2) it is foreseeable that failures in timeliness or accuracy will
5   harm the borrower, (3) "the bank holds all the cards" in a loan modification process, and
6   (4) imposing a duty of care on a lender would reign in "dual tracking," mitigate the lender's
7   incentives to mis- or under-inform borrowers, and further the California Legislature's object in
8   passing the California Homeowner Bill of Rights (HBOR), a residential mortgage borrower can
9   state a negligence claim against a lender for breaches of its duty of care in processing and
10  considering an application for a loan modification. *Id.* at 948–52.

Neither the California Supreme Court nor the Ninth Circuit has taken up this question.[4] Several California federal district courts have reviewed the conflict. A few examples from this district include *Cornejo v. Ocwen Loan Servicing, LLC*, ___ F. Supp. 3d ____, 2015 WL 9268690, at *10 (E.D. Cal. Dec. 21, 2015) (following *Lueras*); *Trigueiro v. Bank of Am., N.A.*, No. 14-02556, 2015 WL 4983599, at *7 (E.D. Cal. Aug. 19, 2015) (following *Alvarez*); *Hsin-Shawn Sheng v. Select Portfolio Servicing, Inc.*, No. 15-0255, 2015 WL 4508759, at *5 (E.D. Cal. July 24, 2015) (following *Alvarez*); *Hatton v. Bank of Am., N.A.*, No. 15-00187, 2015 WL 4112283, at *9 (E.D. Cal. July 8, 2015) (following *Alvarez*); *Meixner v. Wells Fargo Bank, N.A.*, 101 F. Supp. 3d 938, 954 (E.D. Cal. 2015) (following *Alvarez*). As one court has noted, it appears a majority of district judges have followed *Alvarez* in circumstances such as those posed by this case. *See Romo v. Wells Fargo Bank*, 2016 WL 324286, *8-10 (N.D. Cal. Jan. 27, 2016). The undersigned has yet to adopt a formal position. *See Sears v. Bank of Am.*, No. 13-01664, 2015 WL 9481042, at *4 (E.D. Cal. Dec. 29, 2015); *Moreno v. Wells Fargo Home Mortg.*, No. 14-01024-KJM, 2015 WL 3486996, at *10 (E.D. Cal. June 2, 2015); *Lane v. CitiMortgage, Inc.*, No. 14-02295, 2014 WL 6670648, at *5 (E.D. Cal. Nov. 21, 2014).

---

[4] In a recent unpublished decision, the Ninth Circuit declined to certify the question to the California Supreme Court. *Anderson v. Deutsche Bank Nat. Trust Co. Americas*, ___ F. App'x ___, 2016 WL 2343248, at *1 n.1 (9th Cir. May 4, 2016).

Generally speaking, courts that find a lender has no duty of care reach this conclusion after finding that consideration of a home mortgage loan modification application falls within the scope of a mortgage lender's typical role as a lender of money. *See, e.g.*, *Cornejo*, 2015 WL 9268690, at *10; *Carbajal v. Wells Fargo Bank, N.A.*, No. 14-7851, 2015 WL 2454054, at *6 (N.D. Cal. Apr. 10, 2015). Those courts that find a lender does owe a duty of care generally conclude that a borrower and lender no longer find themselves in the arms-length arena they once occupied; after the mortgage agreement takes effect, the lender enjoys significantly greater bargaining power and significantly less incentive to take care. *See, e.g.*, *Meixner*, 101 F. Supp. 3d at 954–55; *Alvarez*, 228 Cal. App. 4th at 949–50. Others reason that "[t]he ground shifted with the passing of HBOR." *Johnson v. PNC Mortg.*, 80 F. Supp. 3d 980, 985 (N.D. Cal. 2015); *see also Alvarez*, 228 Cal. App. 4th at 950 (considering the impact of HBOR).

Having considered the question carefully, and informed by the decisions of other courts, this court adopts the position of the *Alvarez* court and finds that a lender "does owe a duty of care to a borrower not to make material misrepresentations about the status of an application for a loan modification" and that a borrower would foreseeably be harmed "by an inaccurate or untimely communication . . . about the status of a loan modification application." 228 Cal. App. 4th at 946–47. The Martinezes may proceed on a claim that Flagstar breached its duty to take due care while processing and considering their application for a loan modification.

The court acknowledges but disagrees with Flagstar's position that a duty of care should not attach here because Flagstar owed the Martinezes no duty to accept or approve their application. *See* Mot. Dismiss at 7–9. Flagstar's argument does not account for the fact that by the time the Martinezes requested a loan modification, they had entered a long-term financial and business relationship with Flagstar, and Flagstar held "all the cards." *Alvarez*, 228 Cal. App. 4th at 949 (quoting *Jolley*, 213 Cal. App. 4th at 900). Harm to the Martinezes was a foreseeable result should Flagstar not take care in its handling of their application.

Turning to the complaint's allegations, the court is able to draw the reasonable inference that Flagstar owed and breached a duty of care to the Martinezes. The Martinezes allege Flagstar induced them to default, told them they qualified, repeatedly lost or purposely

13

1  misplaced their application materials, and all the while assured them no foreclosure sale would go
2  forward while it considered their application.  Then it completed a foreclosure sale despite their
3  pending application.

    2.  Damages

Damages are an essential element of any claim for common law negligence.  *See, e.g.*, *United States Liab. Ins. Co. v. Haidinger-Hayes, Inc.*, 1 Cal. 3d 586, 597 (1970) ("No action will lie to recover damages if no damages have been sustained.").  Here, the first amended complaint alleges the plaintiffs would have avoided a lengthy, distressing, and costly application process and would have maintained possession of their home had Flagstar fairly considered their applications for loan modifications.  Flagstar may eventually disprove these allegations by showing it would never have granted their application, or that the Martinezes' damages arose entirely from other sources.  *See* Mot. Dismiss at 9–10 (arguing the Martinezes' damages arose from their medical problems, other financial difficulties, and their bankruptcy).  But these are questions for another day.  The Martinezes' allegations suffice for purposes of withstanding this motion.

  C.  Intentional Infliction of Emotional Distress

A complaint states a claim for intentional infliction of emotional distress when it alleges (1) the defendant's conduct was outrageous; (2) the defendant either intended to cause emotional distress or acted with reckless disregard to the probability of causing emotional distress; (3) the plaintiff suffered severe emotional distress; and (4) the defendant's conduct actually and proximately caused that emotional distress.  *Nally v. Grace Cmty. Church*, 47 Cal. 3d 278, 300 (1988).  The defendant's conduct is sufficiently "outrageous" when it is "so extreme as to exceed all bounds of that usually tolerated in a civilized community."  *Davidson v. City of Westminster*, 32 Cal. 3d 197, 209 (1982).

Here, the Martinezes argue the defendants acted outrageously by enticing their default, by losing their application materials several times and asking many times for documents to be resubmitted, and by promising no foreclosure sale would occur while an application was pending, then breaking that promise.  *See* Opp'n at 10.  In certain circumstances, a mortgage

14

lender or servicer's management of a modification application may be so outrageous as to allow a claim for the infliction of emotional distress. *See, e.g.*, *Ragland v. U.S. Bank Nat. Ass'n*, 209 Cal. App. 4th 182, 188–89, 204 (2012) (denying summary judgment on a claim for intentional infliction of emotional distress where a trier of fact could find the lender induced the borrower to default, purposefully refused payment, then sold the home in foreclosure). But the allegations here do not rise to that level. *See, e.g.*, *Helmer v. Bank of Am., N.A.*, No. 12-0733, 2013 WL 1192634, at *6 (E.D. Cal. Mar. 22, 2013) (allegation that a mortgage lender induced the borrower to default was not sufficient to show reckless or intentional behavior with respect to the plaintiffs' emotional distress); *Mehta v. Wells Fargo Bank, N.A.*, 737 F. Supp. 2d 1185, 1204 (S.D. Cal. 2010) (allegation that a mortgage lender broke a promise not to foreclose during the pendency of an application for a loan modification was insufficient). The motion is granted with leave to amend as to this claim, if possible within the confines of Rule 11.

V.   <u>CONCLUSION</u>

The motion to dismiss is GRANTED in part and DENIED in part with leave to amend:

(1) Ms. Prado's claims are dismissed with leave to amend as discussed above. Any amended complaint must clarify (a) what property interest Ms. Prado alleges she lost as a result of Flagstar's alleged wrongdoing, if any, and (b) what injuries she suffered, other than damage to her credit.

(2) The motion is denied with respect to the claims for negligence; and

(3) The claims for intentional infliction of emotional distress are dismissed with leave to amend.

Any second amended complaint shall be filed within twenty-one days of the date this order is filed.

IT IS SO ORDERED.

DATED: July 18, 2016.

_____
UNITED STATES DISTRICT JUDGE